UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHEAPSKATE CHARLIE'S, LLC,
CABINETS TO GO, INC., BOSTON
CEDAR, INC. and CAL GARLAND
d/b/a MEADOW RIVER LUMBER,

    Plaintiffs,

vs.                                                                                              Case No. 13-14086

LOUISIANA-PACIFIC CORPORATION,                               HON. AVERN COHN

_____/

**MEMORANDUM AND ORDER**
**TRANSFERRING THE CASE TO THE NORTHERN DISTRICT OF CALIFORNIA**

**I. Introduction**

    This is a declaratory judgment action. Plaintiffs Cheapskate Charlie's LLC, Cabinets to Go, Inc., Boston Cedar, Inc., and Cal Garland d/b/a Meadow River Lumber (Meadow River) seek a declaration as to whether they are not members of an underlying class action which alleged that defendants Louisiana Pacific Corporation's (LP) products were defective. The class action settled in a case brought in the Northern District of California. Plaintiffs either want to take part in the settlement or pursue their own claims against defendant, depending on whether they are found to be bound by the settlement agreement.

    Before the Court is defendant LP's motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(3) on the grounds that the Northern District of California has exclusive jurisdiction over this dispute. For the reasons that follow, this case will be

transferred to the Northern District of California.

## II.  Background

### A.  The Class Action

LP manufactured composite decking and railing products and sold them under the brand names of LP, WeatherBest, ABTCo and Veranda (the "decking" or "products").  On July 17, 2009, Carol Postier, individually and on behalf of all others similarly situated, filed a class action lawsuit in the Northern District of California against LP alleging defects in the products and seeking injunctive relief, restitution, disgorgement, and damages.  <u>Postier, et al v. Louisiana-Pacific Corp.</u>, CV-09-3290-JCS (N.D. Cal.), assigned to Judge Joseph C. Spero.

LP denied the allegations and disclaimed liability for any and all claims. However, in the interest of resolving the class action litigation, LP agreed to settle the claims with all class members.  The settlement is memorialized in a Settlement Agreement executed in September 2010.  The settlement covers all decking and railing products manufactured and sold by LP, which included two LP plants and all product manufactured on or before October 29, 2007.  The entirety of the settlement is memorialized in a Class Action Settlement Agreement (Settlement Agreement) and Amended Final Judgment and Order Approving Class Action Settlement (Judgment), attached as Exhibits A and B to LP's motion.

### B.  The Settlement

Under the Settlement Agreement, each class member agreed to submit to the exclusive jurisdiction of the United States District Court for the Northern District of

California and acknowledges the relief provided in the Settlement Agreement is the Class Member's "exclusive remedy." Morever, the Settlement Agreement provides that

> The Court shall retain exclusive and continuing jurisdiction over the Action, the Parties, and Class Members, to interpret and enforce the terms, conditions, and obligations of this Settlement.

On March 4, 20111, the district court approved the terms of the Settlement Agreement and issued a Judgment. In the Judgment, the district court said that it "shall retain exclusive and continuing jurisdiction over this Action and the Parties to it, including all Class Members, to the full extent necessary to enforce Settlement."

### C.  Plaintiffs' Purchase of LP Decking

#### 1.  Background

In May of 2009, prior to the filing of the class action lawsuit, LP recalled the Decking product by agreement with the Federal Consumer Product Safety Commission. On November 9, 2009, while the class action was pending, LP entered into an agreement with Meadow River governing the sale of recalled inventory to Meadow River. The Meadow River Contract is attached as Exhibit C to LP's motion. The Meadow River Contract required Meadow River to deliver the recalled Decking product to Greenland Composites, Inc. in Greenland, Arkansas to be "reground" into waste material for disposal, as required by the terms of LP's recall agreement with the Consumer Product Safety Commission. LP also issued invoices to Meadow River for the sale of recalled Decking material. The Meadow River Invoices are attached as Exhibit D to LP's complaint. The Meadow River Contract and the Meadow River Invoices required Meadow River to deliver the Decking product to a facility in Arkansas for grinding, destruction, and landfilling.

According to the complaint, Meadow River did not deliver the Decking product for destruction but rather sold it to Boston Cedar, which in turn sold the product to Cabinets to Go, which in turn sold the product to Cheapskate Charlie's for $329,932.80.  See Plaintiffs' Complaint at ¶¶ 21-23.

### 2. Cheapskate Charlie's Files a Claim in the Class Action

In the summer of 2012, Cheapskate Charlie's filed a claim with LP for a refund of the purchase price it allegedly paid to Cabinets to Go for the Decking product.  LP sent a representative to inspect the Decking product at Cheapskate Charlie's on September 24, 2012 and presented a Settlement Offer letter to Cheapskate Charlie's on December 21, 2012.  The Settlement Package and Inspection Report is attached as Exhibit E to LP's motion.  In the Settlement Offer letter, LP explained that Cheapskate Charlie's purchase invoices showed that it had not purchased the Decking product from an LP distributor or retailer, and therefore LP would not buy back the Decking product for the price that Cheapskate Charlie's had allegedly paid for it.  Second, if Cheapskate Charlie's could show that it purchased the product in "good faith," then LP would buy it back for fifty percent of the price paid.  However, LP determined that Cheapskate Charlie's could not show the necessary "good faith" because it purchased the Decking product while it was subject to a recall by the Consumer Product Safety Commission.  Accordingly, LP offered Cheapskate Charlie's a refund of fifteen cents per linear foot ($0.15/LF), or $63,385.80.

On August 27, 2013, apparently unsatisfied with the compensation offered by LP, plaintiffs filed this lawsuit in state court which LP removed to this Court on September 25, 2013.  Plaintiffs assert the following claims:

    Count I        Declaratory relief

    Count II       Breach of Warranty

    Count III      Negligent Misrepresentation

    Count IV      Fraud

    Count V       Unjust enrichment

### III.  Legal Standard

LP moved to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(3) for improper venue.  LP's argument for dismissal is based on its assertion that plaintiffs are class members and therefore are bound by the settlement agreement which provides for exclusive jurisdiction in the Northern District of California.  In essence, LP's motion is based on a forum selection clause - the exclusive jurisdiction provision in the Settlement Agreement.

The proper procedural vehicle for dismissing a case on the basis of a forum selection clause has been the source of considerable debate and some confusion in this Circuit.  See Heinz v. Grand Circle Travel, 329 F. Supp. 2d 896, 899 n. 6 (W.D. Ky. 2004) (collecting cases evidencing a split among the circuit courts of appeals as to whether Rule 12(b)(1), 12(b)(3), 12(b)(6), or 28 U.S.C. § 1404(a) is the answer to the "vexing" question of which is the proper manner to dispose of a case where a party seeks to enforce a forum selection clause).  The Sixth Circuit has also stated that "forum selection clause[s] should not be enforced through dismissal for improper venue under FRCP 12(b)(3) because these clauses do not deprive the court of proper venue." Wong v. PartyGaming, Ltd., 589 F.3d 821, 830 (6th Cir. 2009).

The Court need not resolve the question as to whether Rule 12(b)(6) should apply, however.  This is because the parties in their papers have both raised the issue of whether a transfer of venue is appropriate.  LP, as an alternative to dismissal, asks that the case be transferred to the Northern District of California.  Plaintiffs also suggests that the case may be transferred.  Under these circumstances, the Court will treat LP's motion as a motion to transfer venue under 28 U.S.C. § 1404(a).

Section 1404(a) states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  The decision whether to transfer a case under Section 1404 is within the district court's discretion.  Kerobo v. Sw. Clean Fuels Corp., 285 F.3d 531, 537 (6th Cir.2002) (citing Stewart, 487 U.S. at 29).  Rather than look to the well-pleaded complaint, courts examine other evidence of convenience, public interest, and even the ends of justice.  See Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).  Moreover, if applicable, the forum selection clause "should receive neither dispositive consideration ... nor no consideration ...." Id. at 538.

## IV.  Analysis

Both parties spend a good deal of time arguing over whether plaintiffs are class members and therefore bound by the terms of the Settlement Agreement.  At its core, this is a dispute over application of a settlement agreement arising of out litigation in the Northern District of California.  The district judge who presided over the litigation retained jurisdiction over any dispute over the settlement.  This is such a dispute.  For the interests of justice, this case belongs in the Northern Division, not in this district.

Accordingly, this case is TRANSFERRED to the Northern District of California.

SO ORDERED.

        s/Avern Cohn
   UNITED STATES DISTRICT JUDGE

Dated:  December 11, 2013

## CERTIFICATION

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 11, 2013, by electronic and/or ordinary mail.

      s/Carol Bethel for Sakne Chami
   Case Manager, (313) 234-5160