1
2
3
4                            UNITED STATES DISTRICT COURT
5                          NORTHERN DISTRICT OF CALIFORNIA
6
7    CHEAPSKATE CHARLIE'S LLC, et al.,

         Plaintiffs,                           Case No.  13-cv-05888-JCS
8
9        v.                                    ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFENDANT'S
10   LOUISIANA-PACIFIC CORPORATION,            MOTION TO DISMISS

         Defendant.                            Dkt. No. 34
11
12

13   I.      INTRODUCTION

14           In this action, Plaintiffs Cheapskate Charlie's, LLC, Cabinets To Go, Inc., and Boston

15   Cedar, Inc. assert claims for fraud and negligent misrepresentation against Defendant Louisiana-

16   Pacific Corporation.  Defendant has filed a Motion to Dismiss (hereafter, "Motion"), contending

17   the First Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6)

18   for failure to state a claim.  The Court finds this Motion suitable for disposition without oral

19   argument, and vacates the hearing scheduled for July 11, 2014, at 9:30 a.m.  *See* Civil L.R. 7-1(b).

20   The time of the Case Management Conference is changed to 2:00 p.m. on July 11, 2014.  For the

21   reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

22   II.     BACKGROUND

23           A.      First Amended Complaint

24           On or about August of 2008, Louisiana Pacific Corporation (hereafter, "LP" or

25   "Defendant") issued a product advisory for certain decking product sold after January 1, 2005.

26   First Amended Complaint ("FAC") ¶ 13.  On May 13, 2009, certain decking products

27   _____

28           [1] The parties have consented to the jurisdiction of a magistrate judge.  *See* 28 U.S.C. §
     636(c).

1    manufactured by LP were subject to a product recall pursuant to an agreement with the Consumer

2    Products Safety Commission (hereafter, "Recall"). *Id*. ¶ 14. In September of 2010, LP entered

3    into a settlement agreement regarding certain decking product in the class action lawsuit, *Postier,*

4    *et al. v. Louisiana-Pacific Corp*., No. 09-cv-03290-JCS (hereafter, "Settlement Agreement"). *Id*. ¶

5    15.

6           Plaintiffs allege that on or about September of 2011, Cal Garland d/b/a Meadow River

7    Lumber contacted Boston Cedar with an offer to sell certain decking materials manufactured by

8    LP and suitable for resale to retailers and consumers (hereafter, "the subject decking"). *Id*. ¶ 16.

9    At the time, the subject decking was in LP's possession. *See id*. ¶ 22.

10          Boston Cedar contacted LP to confirm that the subject decking was suitable for resale to

11   retailers and consumers. *Id*. ¶ 17. Boston Cedar spoke to a production supervisor for LP, Stanley

12   Oliver. *Id*. ¶ 19. Boston Cedar asked Oliver whether the subject decking was suitable for resale to

13   retailers and consumers, and whether it had been subject to the Recall. *Id*. ¶¶ 20-21. Oliver

14   "made statements" to Boston Cedar that the subject decking was suitable for resale to retailers and

15   consumers, and that it was not subject to the Recall. *Id*. ¶¶ 23-24.

16          Plaintiffs allege that prior to delivering the subject decking to Boston Cedar, LP repacked

17   the decking and attempted to remove all prior labels and branding. *Id*. ¶¶ 25-26. By repackaging

18   the decking, LP allegedly made it more difficult to ascertain whether it was subject to the Recall

19   and suitable for resale to retailers and consumers. *Id*. ¶ 27.

20          Boston Cedar purchased the subject decking for $329,932.80. *Id*. ¶ 28. Boston Cedar then

21   sold the subject decking to Cabinets To Go (hereafter, "CTG"), which sold it to Cheapskate

22   Charlie's (hereafter, "Cheapskate"). *Id*. ¶¶ 29-30. The decking currently remains in Cheapskate's

23   possession and continues to accrue storage fees. *Id*. ¶ 31.

24          The First Amended Complaint omits certain allegations that were in Plaintiffs' original

25   complaint. There, Plaintiffs alleged that Boston Cedar purchased the subject decking from Cal

26   Garland, who had purchased the decking from LP. *See* Dkt. No. 1 at 5-16 ("Original Compl.") ¶

27   21 ("Garland did purchase directly from LP WeatherBest Decking materials … which were in turn

28   sold to Boston Cedar, and in turn to Cabinets to Go, and in turn to Cheapskate Charlie's.").

United States District Court
Northern District of California

2

Plaintiffs also alleged that each downstream purchase was the same price paid by Boston Cedar, meaning that CTG purchased the subject decking from Boston Cedar, and Cheapskate from CTG, for $329,932.80. *Id.* ¶¶ 22, 24.

On September 19, 2012, LP sent a representative to inspect the decking in Cheapskate's possession. *Id.* ¶ 32. Following an inspection, LP informed Plaintiffs that the decking was in fact subject to the Recall and the Settlement Agreement, and therefore, was not suitable for resale to retailers and consumers. *Id.* ¶ 33. LP offered to pay Plaintiffs only $63,385.80, or $0.15 per linear foot, for the subject decking. *Id.* ¶ 34.

The First Amended Complaint asserts claims for fraud and negligent misrepresentation. *See generally*, FAC. In the claim for fraud, Plaintiffs allege that LP, through its employee, Oliver, falsely represented that the subject decking was not subject to the Recall and was suitable for resale to retailers and consumers. *Id.* ¶ 37. Plaintiffs allege that Oliver knew his statements were false and misleading because of his and LP's superior and first-hand knowledge as the decking manufacturer. *Id.* ¶ 38. Plaintiffs allege that Oliver intentionally concealed the fact that the decking was subject to the Settlement Agreement and not suitable for resale to retailers and consumers, in part by removing all prior labels and branding and repackaging the materials. *Id.* ¶ 39. Plaintiffs allege that LP intended to deceive and induce Boston Cedar, and that Boston Cedar actually relied on LP's misrepresentations when it purchased the decking. *Id.* ¶¶ 45-46. Plaintiffs allege that such reliance was reasonable, and that Plaintiffs have been damaged as a result. *Id.* ¶¶ 48, 50.

In the claim for negligent misrepresentation, Plaintiffs allege that Oliver made false representations which he either knew or should have known were false because of his and LP's superior, first-hand knowledge as the decking manufacturer. *Id.* ¶¶ 52-53. Plaintiffs allege that Oliver had a duty to disclose to Boston Cedar that the decking was subject to the Recall and not suitable for resale to retailers and consumers, and that LP's repackaging of the decking shows its first-hand familiarity. *Id.* ¶¶ 55, 57.

**B.     Procedural History**

The original complaint in this case was filed on August 27, 2013, in the Circuit Court for

the County of Wayne, State of Michigan.  *See generally*, Original Compl.  Defendant removed the case to United States District Court for the Eastern District of Michigan.  Dkt. No. 1 (Notice of Removal).  The case was assigned to the Honorable Avern Cohn, who transferred the case to the Northern District of California on December 11, 2013.  Dkt. No. 11.  The case was subsequently related to *Postier, et al. v. Louisiana-Pacific Corp.*, No. 09-cv-03290-JCS.  Dkt. No. 30.  On April 21, 2014, this Court granted Plaintiffs' motion to file an amended complaint.  Dkt. No. 31.  Defendants filed the instant Motion to Dismiss on May 12, 2014.  Dkt. No. 34.

### III.    LEGAL STANDARD

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed.R.Civ.P. 12(b)(6).  "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star. Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Rule 8(a) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P 8(a).  The complaint generally need not contain "detailed factual allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  There must be sufficient factual allegations "to cross 'the line between possibility and plausibility.' "  *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, No. 12-16526, 2014 WL 1797676, at *2, --- F.3d ---- (9th Cir. 2014).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678.

### IV.    DISCUSSION

Defendant contends that the First Amended Complaint should be dismissed under Federal Rule of Procedure 12(b)(6) for failure to state a claim.  Defendant argues that Plaintiffs fail to plead facts establishing several of the elements of a fraud claim, specifically, the elements of LP's intent to induce reliance, Plaintiffs' justifiable reliance, and injury.  Defendant also contends that Michigan law does not recognize a cause of action for negligent misrepresentation in these circumstances, and that the negligent misrepresentation claim fails for the same reasons as the

fraud claim.

In response to Defendant's Motion, Plaintiffs contend they have sufficiently pled a claim for fraud under the three theories of fraud recognized under Michigan law: traditional fraud, silent fraud and innocent misrepresentation. Defendant disputes this assertion in the reply brief.

Both parties apply Michigan common law when discussing the issues presented in this case, implicitly suggesting and agreeing that Michigan law governs here. Accordingly, the Court will consider whether Plaintiffs have stated claims for fraud and negligent misrepresentation under Michigan law.

**B.      Whether Plaintiffs State a Claim for Fraud**

Under Michigan law, there are six elements to a traditional fraud claim:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, it knew that it was false, or made the representation recklessly, without any knowledge of its truth, and as a positive assertion; (4) the defendant made the representation with the intention that it should be acted on by the plaintiff; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff suffered injury due to his reliance on the representation.

*MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 662 (6th Cir. 2013) (citing *Hord v. Envtl. Research Inst. of Mich.,* 463 Mich. 399, 617 N.W.2d 543, 546 (2000) (per curiam)). As noted above, Defendant challenges three of these elements: (1) intent to induce reliance; (2) justifiable reliance; and (3) injury. Each of these issues is addressed in turn.

**1.      Intent to Induce Reliance**

Defendant contends that Plaintiffs fail to adequately plead that LP intended Boston Cedar to act in reliance on his misrepresentation. Plaintiffs allege that "LP, by and through its employees, intended to induce Boston Cedar to act in reliance on its misrepresentations." FAC ¶ 45. Allegations of knowledge of falsity and intent to induce reliance may be alleged generally. Fed.R.Civ.P. 9(b). Moreover, the Court finds this allegation plausible based on the facts alleged in the First Amended Complaint. Oliver was a production supervisor for LP, and the subject decking was in LP's possession at the time of Boston Cedar's inquiry. *Id*. ¶¶ 19, 22. LP also allegedly removed all prior labels and branding and repackaged the materials prior to sending them to

United States District Court
Northern District of California

5

1   Boston Cedar.  *Id*. ¶ 39.  These circumstances plausibly suggest that Oliver knew his statement

2   was false and intended Boston Cedar to rely on his statement.

3          Defendant contends that LP had already sold the subject decking to Cal Garland at the time

4   of Boston Cedar's inquiry, and therefore, had no motivation to induce Boston Cedar's reliance,

5   rendering this allegation implausible.  Motion at 6.  Defendants have not, however, cited any

6   authority in support of the proposition that a plaintiff must allege the defendant's *motivation* to

7   commit fraud.  The allegation that Oliver intended to induce reliance is plausible for the reasons

8   noted above, even if Oliver's motivation is unknown.

9          Plaintiffs do not allege that LP intended CTG and Cheapskate to rely on any false

10  statements.  *See* FAC ¶ 45 (alleging that LP intended Boston Cedar to rely).  Plaintiffs

11  acknowledge this omission in their First Amended Complaint, and request leave to amend this

12  point.  *See* Opposition at 8.  Accordingly, the fraud claim asserted on behalf of CTG and

13  Cheapskate is dismissed with leave to amend.  In an amended complaint, Plaintiffs may allege

14  facts which plausibly suggest that LP intended downstream purchasers from Boston Cedar to rely

15  on Oliver's statements.[2]

16                        **2.      Justifiable Reliance**

17         Defendants note that Plaintiffs have failed to allege that CTG and Cheapskate reasonably

18  relied on any false statement made by LP.  *See* FAC ¶¶ 46-49 (alleging only that Boston Cedar

19  relied on Oliver's statements).  Plaintiffs do not respond to this argument.  *See* Opposition at 8.

20  Because there is no allegation of justifiable reliance on part of CTG and Cheapskate, the fraud

21  claim is dismissed as to CTG and Cheapskate for this additional reason.

22         The First Amended Complaint alleges that Boston Cedar reasonably relied on Oliver's

23  _____

24         [2] Plaintiffs contend that CTG and Cheapskate Charlie's were reasonably foreseeable
    victims of LP's alleged fraud, thus the cause of action for fraud runs to them.  *See* Opposition at 8.

25  Plaintiffs cite *Molecular Tech. Corp. v. Valentine*, where the Sixth Circuit, applying Michigan law
    when discussing a claim for *negligent misrepresentation*, wrote that a defendant owes "a duty in

26  favor of all those third parties who defendant knows will rely on the information *and* to third
    parties who defendant should reasonably foresee will rely on the information."  925 F.2d 910, 916

27  (6th Cir. 1991) (emphasis in original).  "[D]uty is irrelevant in a fraud claim."  *Lucas v. Awaad*,
    299 Mich.App. 345, 364, *appeal denied*, 495 Mich. 875 (2013).  Therefore, *Valentine* does not

28  support Plaintiffs' argument in the context of a claim for fraud.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   statements because Oliver and LP had superior, first-hand knowledge about the decking as the

2   manufacturer, and there was no reason to believe that an employee of LP would make a

3   misrepresentation about the decking.  FAC ¶¶ 48-49.  At the time Boston Cedar contacted LP, the

4   subject decking was in LP's possession, even though it had been sold to Cal Garland. *See* FAC ¶

5   22.  It was not unreasonable for Boston Cedar to inquire with LP about the status of the decking

6   which it had manufactured and was in its possession.  Nor was it unreasonable for Boston Cedar to

7   rely on the representations made by a production supervisor for LP.  Accordingly, the First

8   Amended Complaint sufficiently pleads that Boston Cedar reasonably relied on Oliver's

9   representations.

10         Defendant challenges the reasonableness of Boston Cedar's reliance and contends that

11   Boston Cedar did not adequately investigate the truth of Oliver's statements.  Defendant argues

12   that Boston Cedar should have been suspicious when Cal Garland offered to sell the subject

13   decking with assurances that it was "suitable for resale to retailers and consumers," FAC ¶ 17,

14   because such explicit assurances are unusual unless something is wrong.  Defendants also contend

15   that Boston Cedar was aware of the Recall prior to contacting LP, and therefore, should have

16   inquired further about the status of the decking; for instance, by searching online or by asking Cal

17   Garland.

18         The crux of Defendant's argument is that Boston Cedar should not have taken Oliver at his

19   word, and should have conducted a more thorough investigation before purchasing the subject

20   decking.  Boston Cedar was not, however, under any "independent duty to investigate and

21   corroborate representations" made by Oliver unless Boston Cedar "was given direct information

22   refuting the misrepresentations."  *Titan Ins. Co. v. Hyten*, 491 Mich. 547, 555 n. 4 (2012)

23   ("Ignoring information that contradicts a misrepresentation is considerably different than failing to

24   affirmatively and actively investigate a representation.").  There is no indication that Boston Cedar

25   was ever "given direct information" that the subject decking was subject to the Recall.  The fact

26   Boston Cedar was aware of the possibility is insufficient; in fact, that is the very reason Boston

27   Cedar inquired with Oliver.

28

United States District Court
Northern District of California

1       Defendant also contends that there is no allegation Oliver was provided with the

2   information he would have needed to make a representation about the decking purchase.  Motion

3   at 8.  For instance, Defendant argues that Plaintiffs did not allege that Boston Cedar was even

4   considering a purchase, or that the product in question was the same decking that LP had

5   previously sold to Cal Garland.  Motion at 8.

6       Defendant is incorrect.  Plaintiffs allege that Boston Cedar asked Oliver "if the *subject*

7   *decking* was suitable for *resale* to retailers and consumers."  FAC ¶ 23 (emphasis added).  The

8   inquiry regarding Boston Cedar's ability to resell the decking should have put Oliver on notice

9   that Boston Cedar was considering a purchase so that it could be resold.  In other words, the "very

10  nature of Boston Cedar's question carries with it the undeniable and inherent implication that

11  Boston Cedar intended to resell the subject decking to retailers and consumers."  Opposition at 6.

12  Moreover, the term "subject decking" is defined in the First Amended Complaint as the decking

13  material which Cal Garland offered to sell to Boston Cedar.  *See* FAC ¶ 16.  Because Plaintiffs

14  allege that Boston Cedar asked Oliver about the "subject decking," they sufficiently allege that

15  Oliver was provided with the information he would have needed to make an assessment.  *See id.* ¶

16  23.

17          **3.      Injury**

18      Defendant contends that Boston Cedar and CTG have suffered no injury because after

19  Boston Cedar purchased the subject decking for $329,932.80, CTG bought the subject decking

20  from Boston Cedar, and then Cheapskate Charlie's bought the subject decking from CTG.  FAC

21  ¶¶ 29-30.  Plaintiffs' original complaint alleged that all parties paid the same price for the decking

22  ($329,932.80).  Original Compl. ¶¶ 22, 24.  Defendants contend that Boston Cedar and CTG

23  cannot assert claims for fraud and negligent misrepresentation because "even if LP tortuously

24  misled Boston Cedar or Cabinets to Go into buying the decking, they have already recovered the

25  full purchase price."  Motion at 9.

26      Defendants cite no authority in support of this position.  Even though Boston Cedar sold

27  the subject decking to CTG, who sold it to Cheapskate, their injuries arising from LP's alleged

28  fraud still exist.  Boston Cedar allegedly sold the decking subject to the Recall and the Settlement

8

1   Agreement to CTG, and therefore may be liable, at the very least, to indemnify CTG for the

2   diminution in the value of the decking.  CTG allegedly sold the decking subject to the Recall and

3   the Settlement Agreement to Cheapskate, and therefore may be liable, at the very least, to

4   indemnify Cheapskate for the diminution in the value of the decking.  Cheapskate has also

5   suffered an injury, as it may also own decking worth less than its purchase price.  Plaintiffs need

6   not allege more to establish that all three Plaintiffs have suffered a plausible injury.[3]

7              **B.        Whether Plaintiffs State a Claim for Silent Fraud or Innocent Misrepresentation**

8              In the opposition brief, Plaintiffs contend that in addition to traditional fraud, the First

9   Amended Complaint sufficiently pleads two other theories of fraud recognized under Michigan

10  law: silent fraud, and what Plaintiffs call "innocent/negligent misrepresentation."  *See* Opposition

11  at 4.  As a threshold matter, the Court notes that under Michigan law, there is a distinction

12  between claims for innocent and negligent misrepresentation.  *See Wargelin v. Bank of Am., NA*,

13  No. 12-15003, 2013 WL 5587817, at *7 (E.D. Mich. Oct. 10, 2013), *appeal dismissed* (Apr. 28,

14  2014) ("innocent misrepresentation and negligent misrepresentation are two separate claims, with

15  two separate requirements and therefore these claims cannot be conflated into one catchall").

16  Plaintiffs plead a separate claim for negligent misrepresentation, which is discussed below.  Here,

17  the Court addresses Plaintiffs' allegations of fraud under the theories of innocent

18  misrepresentation and silent fraud.

19  //

20

United States District Court
Northern District of California

21  _____

22        [3] Defendant also contends that "[b]ecause these two plaintiffs have no damages, they have *no standing* in this lawsuit and they are not proper parties."  Motion at 9 (emphasis added).  To

23  have constitutional standing under Article III, a plaintiff must have suffered an "injury in fact" that is "fairly traceable" to the defendant and can be "redressed" by a favorable decision.  *Robins v.*

24  *Spokeo, Inc.*, 742 F.3d 409, 412 (9th Cir. 2014) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000)). An injury must be "concrete and particularized" and

25  "actual or imminent." *Id.*  Boston Cedar and CGT, like Cheapskate, has standing to bring this action because they are victims of an alleged fraud.  This is an "invasion of a legally protected

26  interest which is ... concrete and particularized." *Lujan,* 504 F.3d at 561.  Boston Cedar and CTG have a "personal stake in the outcome" of this case because if the dispute is not resolved, they may

27  be liable for any diminution in the value of the decking.  *Baker v. Carr,* 369 U.S. 186, 204 (1962). Plaintiffs need not allege more at the pleading stage, where "general factual allegations of injury

28  resulting from the defendant's conduct may suffice." *Lujan,* 504 U.S. at 561.

United States District Court
Northern District of California

1                   **1.**       **Innocent Misrepresentation**

2         "A claim of innocent misrepresentation is shown if a party detrimentally relies upon a false

3 representation in such a manner that the injury suffered by that party inures to the benefit of the

4 party who made the misrepresentation." *Unibar Maint. Serv. v. Saigh,* 283 Mich.App. 609, 769

5 N.W.2d 911, (Mich.Ct.App.2009) (quoting *M & D, Inc. v. McConkey,* 231 Mich.App. 22, 27, 585

6 N.W.2d 33 (Mich.Ct.App.1998)). "It is not necessary that a plaintiff show a 'fraudulent purpose'

7 or intent on the defendant's behalf, or even that the defendant knew that the representation was

8 false." *Unibar*, 283 Mich.App. at 621 (quoting *McConkey*, 231 Mich.App. at 27-28). "The

9 plaintiff, however, must show that privity of contract existed between the plaintiff and the

10 defendant." *Unibar*, 283 Mich.App. at 621 (citing *McConkey*, 231 Mich.App. at 28).

11         The First Amended Complaint does not state a claim for innocent misrepresentation

12 because Plaintiffs have not alleged that Boston Cedar was in privity of contract with LP, or that

13 the injury suffered inured to the benefit of LP. The First Amended Complaint demonstrates that

14 Cal Garland offered to sell Boston Cedar the subject decking. FAC ¶ 16. There is no mention of

15 any contract between LP and Boston Cedar. *See id.* Moreover, there is no indication Oliver has

16 benefitted in any way from the alleged fraud. Original Compl. ¶ 21. Accordingly, Plaintiffs

17 cannot prevail on a claim for innocent misrepresentation.

18                   **2.**       **Silent Fraud**

19         Under Michigan law, "[s]ilent fraud is essentially the same [as traditional fraud] except

20 that it is based on a defendant suppressing a material fact that he or she was legally obligated to

21 disclose, rather than making an affirmative misrepresentation." *Barclae v. Zarb*, 300 Mich.App.

22 455, 476 (2013). "[T]he plaintiff must show that the defendant suppressed the truth with the intent

23 to defraud the plaintiff and that the defendant had a legal or equitable duty of disclosure." *Id*.

24 "Michigan courts have recognized that silence cannot constitute actionable fraud *unless* it occurred

25 under circumstances where there was a *legal duty of disclosure*." *M&D, Inc. v. W.B. McConkey*,

26 231 Mich.App. 22, 29 (1998) (emphasis added).

27         The "duty" in the context of silent fraud is a duty to disclose. *See id.* The duty to disclose

28 arises when a question is asked and not answered, or is not answered completely, triggering the

duty for more complete explanation.  *W.B. McConkey*, 231 Mich.App. at 31 ("Our review of Michigan Supreme Court precedent regarding this issue reveals that, in every case, the fraud by nondisclosure was based upon statements by the vendor that were made in response to a specific inquiry by the purchaser, which statements were in some way incomplete or misleading.").

In this case, Plaintiffs allege that they specifically inquired as to whether the subject decking was suitable for resale to retailers and consumers, and whether it had been previously subject to the Recall.  FAC ¶¶ 20-21.  Plaintiffs also allege, however, that Oliver answered these inquiries by confirming that the subject decking was suitable for resale and was not subject to the Recall.  *Id.* ¶¶ 23-24.  Plaintiffs allege an *affirmative* misrepresentation, not fraud through silence when there was a legal duty to speak.  Accordingly, the facts alleged in the First Amended Complaint do not support a claim for silent fraud.

### C.       Whether Plaintiffs State a Claim for Negligent Misrepresentation

Defendants contend the claim for negligent misrepresentation fails because Michigan law has only recognized the tort of negligent misrepresentation in the context of an abstracter negligently performing a title search.  Motion at 9 (citing *Williams v. Polgar*, 391 Mich. 6 (1974)). In *Polgar*, the Michigan Supreme Court "adopt[ed] the tort action of negligent misrepresentation *in this context*."  *Id.* at 21 (emphasis added).  The Michigan Supreme Court has not discussed the tort of negligent misrepresentation since deciding *Polgar*.  *See MacDonald v. Tomas M. Cooley Law School*, 724 F.3d 654, 666 (6th Cir. 2013).  Nevertheless, as discussed by the Sixth Circuit in *MacDonald*, the Michigan Court of Appeals has recognized this tort in other contexts.  *See id.* (citing *Alfieri v. Bertorelli*, 295 Mich.App. 189 (2012); *Unibar Maint. Servs., Inc. v. Saigh*, 283 Mich.App. 609, 769 (2009); *The Mable Cleary Trust v. The Edward-Marlah Muzyl Trust*, 262 Mich.App. 485 (2004); *Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 174 Mich.App. 14 1989)).  "[O]rdinarily a state's intermediate appellate court decisions are the best authority in the absence of any supreme court precedent." *MacDonald*, 724 F.3d at 663 (quoting *United States v. Simpson*, 520 F.3d 531, 536 (6th Cir. 2008)).  Accordingly, the Court finds that Michigan law recognizes a cause of action for negligent misrepresentation.

Defendant argues that because the negligent misrepresentation claim requires many of the

1    same elements as the claim for fraud (i.e., materiality, actual reliance, justifiable reliance, and

2    damages), Plaintiffs' claim for negligent misrepresentation fails for the same reason as the fraud

3    claim.  The Court found above that Boston Cedar's fraud claim is sufficiently pled.  Accordingly,

4    the discussion above regarding the fraud claim does not provide grounds to dismiss the negligent

5    misrepresentation claim asserted on behalf of Boston Cedar.

6           However, as discussed above, the First Amended Complaint fails to allege that LP

7    intended CTG and Cheapskate to rely on the representations of its employees, or that CTG and

8    Cheapskate reasonably relied on Oliver's statements.  Accordingly, the negligent

9    misrepresentation claim fails as to CTG and Cheapskate.

10          Under Michigan law, "[a] claim for negligent misrepresentation requires plaintiff to prove

11   that a party justifiably relied to his detriment on information prepared without reasonable care by

12   one *who owed the relying party a duty of care*."  *Alfieri*, 295 Mich.App. at 194 (quoting *Unibar*

13   *Maint. Servs.,* 283 Mich.App. at 621) (emphasis added).  Whether a defendant owed the plaintiff a

14   legal duty is a question of law.  *Murdock v. Higgins*, 454 Mich. 46, 53 (1997).  In determining

15   whether to impose a duty, courts evaluate factors such as the relationship of the parties, the

16   foreseeability of the harm, the burden on the defendant, and the nature of the risk presented. *Id.*

17   After a finding that a duty exists, the factfinder must then determine whether there was a breach of

18   the duty in light of the particular facts of the case.  *Id.*

19          Plaintiffs allege that LP had a duty to disclose that the subject decking was subject to a

20   Recall.  FAC ¶ 59.  As a threshold matter, a "duty" in the context of negligent misrepresentation is

21   a duty of care.  *Alfieri*, 295 Mich.App. at 194.  Plaintiffs cite no authority for the proposition that

22   LP would owe Plaintiffs a duty of care under the circumstances of this case.

23          In *Polgar*, the Michigan Supreme Court emphasized that an abstracter would be liable for

24   negligently performing a title search, but only to the extent the abstracter was negligent in

25   performing his or her "contractual duty."  *Polgar*, 391 Mich. at 22.  Moreover, in Michigan,

26   insurance agents owe no duty to advise the insured regarding the adequacy of coverage unless

27   there is some sort of "special relationship" between the insurer and the insured.  *See e.g., Zaremba*

28   *Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich.App. 16, 21 (2008).  Neither situation applies here:

United States District Court
Northern District of California

12

there was no contract between Defendant and Plaintiffs, and there appears to have been no special relationship between Defendant and Plaintiffs.  Because Plaintiffs fail to plead facts showing they were owed a duty, the negligent misrepresentation claim fails as currently pled.

**V.      CONCLUSION**

For the foregoing reasons, the Motion is GRANTED in part and DENIED in part.  The claim for fraud asserted on behalf of CTG and Cheapskate, and the claim for negligent misrepresentation asserted on behalf of all plaintiffs, are DISMISSED WITH LEAVE TO AMEND.  If Plaintiffs choose to file an amended complaint, they must do so within thirty (30) days of this order.

**IT IS SO ORDERED.**

Dated: June 24, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge