UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEAPSKATE CHARLIE'S LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LOUISIANA-PACIFIC CORPORATION,<br><br>Defendant. | Case No. 13-cv-05888-JCS<br><br>**ORDER REGARDING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 68, 73 |

## I. INTRODUCTION

This case relates to a sale of decking materials produced by Defendant Louisiana-Pacific Corporation ("LP"). Plaintiff Boston Cedar, Inc. alleges that LP falsely represented that the decking materials were suitable for resale and not subject to a recall, and that Boston Cedar purchased the materials from Cal Garland and/or Meadow River Lumber Company (collectively, the "Garland Parties") in reliance on LP's misrepresentation. LP filed a third-party complaint against the Garland Parties, who now move to dismiss. The Garland Parties also filed a counterclaim against LP, which LP moves to dismiss. The Court finds the parties' motions suitable for resolution without oral argument, and **vacates the hearing scheduled for December 12, 2014.** *See* Civ. L.R. 7-1(b). The case management conference will occur as scheduled at 9:30 a.m. on December 12, 2014. As discussed below, the Garland Parties' Motion is GRANTED in part and DENIED in part, and LP's Motion is GRANTED. Both parties may file amended pleadings **no later than January 16, 2015.**[1]

---

[1] The parties have consented to the jurisdiction of a magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Procedural History and Present Motions

This case was originally filed in the Circuit Court for the County of Wayne, Michigan on August 27, 2013, with Boston Cedar, Cabinets to Go, Inc., Cheapskate Charlie's, LLC, and the Garland Parties named as plaintiffs. *See generally* Original Compl. (dkt. 1-1). LP removed the case to United States District Court for the Eastern District of Michigan. Notice of Removal (dkt. 1). The case was assigned to the Honorable Avern Cohn, who transferred the case to the Northern District of California on December 11, 2013. Dkt. 11. The case was then related to *Postier, et al. v. Louisiana-Pacific Corp.*, No. 09-cv-03290-JCS. Dkt. 30. With leave of the Court, the plaintiffs filed their First Amended Complaint ("FAC," dkt. 32), which no longer included the Garland Parties as plaintiffs.[2] LP moved to dismiss, and the Court granted LP's motion in part, leaving only Boston Cedar's claim for fraud. *See generally* dkt. 41. The Court granted all plaintiffs leave to amend, but no amended complaint was filed.

LP filed an answer to the FAC that included a third-party claim against the Garland Parties. Dkt. 50. The Garland Parties moved to dismiss, *see* dkt. 58, and LP filed an Answer and Amended Third-Party Complaint (the "LP Answer," dkt. 63) on September 12, 2014. LP brings claims for indemnity, contribution, and specific performance of contractual obligations. LP Answer ¶¶ 45−110.

The Garland Parties filed a "Special Answer" (the "Garland Answer," dkt. 66) to the third-party claims on October 1, 2014, and included a counterclaim for fraud against LP. Later the same day, the Garland Parties filed a motion to dismiss LP's third-party claims. Garland Mot. (dkts. 67, 68). LP opposed the Garland Parties' Motion, *see* dkt. 72, but the Garland Parties did not file a reply. LP also filed a motion to dismiss the Garland Parties' counterclaim. LP Mot. (dkt. 73). That Motion has been fully briefed. Although the Garland Parties filed their Opposition (dkt. 74) late, LP concedes that any prejudice resulting from the late filing has been cured. *See* LP Reply (dkt. 77) at 2 n.1.

---

[2] The Garland Parties state that they do not know why they were initially named as plaintiffs and that they were not aware of this litigation until LP filed its Third-Party Complaint. Garland Opp'n (dkt. 74) at 2.

2

### B. Allegations of Boston Cedar's First Amended Complaint[3]

Certain decking materials manufactured by LP were subject to a product advisory in 2008, a recall in 2009, and a class action settlement in 2010. FAC ¶¶ 13−15. Boston Cedar alleges that in September of 2011, the Garland Parties "contacted Boston Cedar with an offer to sell certain decking materials manufactured by LP and suitable for resale to retailers and consumers" (hereafter, "the subject decking"), which was in LP's possession at the time. *Id.* ¶¶ 16, 22.

Boston Cedar contacted LP to confirm that the subject decking was suitable for resale to retailers and consumers, and spoke to a production supervisor for LP, Stanley Oliver. *Id.* ¶¶ 17, 19. Oliver stated that the decking was suitable for resale and not subject to the 2009 recall. *Id.* ¶¶ 23−24. Boston Cedar then purchased the subject decking from the Garland Parties for $329,932.90. *See id.* ¶ 28.[4] According to Boston Cedar, LP repackaged the subject decking before delivery and attempted to remove all prior labels and branding, making it difficult to determine whether the decking was subject to the recall. *Id.* ¶¶ 25−27.

Boston Cedar sold the subject decking to Cabinets To Go, Inc., which then sold it to Cheapskate Charlie's, LLC. *Id.* ¶¶ 29−30. On September 19, 2012, an LP representative inspected the decking in Cheapskate Charlie's possession and determined that it was subject to the recall and the class action settlement, and thus not suitable for resale to retailers or consumers. *Id.* ¶¶ 32−33. LP offered to pay $63,385.80 to buy back the subject decking. *Id.* ¶ 34. The subject decking remains in Cheapskate Charlie's possession and continues to accrue storage fees. *Id.* ¶ 31.

---

[3] The allegations of Boston Cedar's First Amended Complaint are set forth in greater detail in the Court's previous order (dkt. 41) addressing LP's motion to dismiss that Complaint. *See Cheapskate Charlie's LLC v. Louisiana-Pac. Corp.*, No. 13-cv-05888-JCS, 2014 WL 2880426 (N.D. Cal. June 24, 2014).

[4] Although Boston Cedar's FAC does not explicitly specify who sold the subject decking, the FAC alleges that the Garland Parties offered to sell the decking, FAC ¶ 16, an earlier version of Boston Cedar's Complaint alleged that Boston Cedar bought the decking from the Garland Parties, Compl. (dkt. 1-1) ¶ 21, and the parties to the present motions acknowledge that the Garland Parties sold the decking. *See* LP Answer (dkt. 63) ¶¶ 81−85; Garland Special Answer (dkt. 66) ¶¶ 125−26.

### C. Allegations of LP's Third-Party Complaint

LP alleges that it transferred or sold recalled building products to the Garland Parties on multiple occasions, and that on each occasion the Garland Parties "knew or should have known that the products . . . had been recalled," "knew or should have known that the products . . . had to be destroyed," and "promised not distribute the products on the market and [instead] to dispose of them." LP Answer ¶¶ 46−49.

In January of 2009, LP sold the Garland Parties recalled building materials from LP's Selma, Alabama facility for $8,718.06. *Id.* ¶¶ 51, 54. As part of that sale, the Garland Parties "agreed to grind, burn, or send to the landfill the products . . . in accordance with all applicable laws." *Id.* ¶ 56. In another transaction in November of 2009, LP transferred approximately two million pounds of recalled decking to the Garland Parties as part of an agreement under which the Garland Parties would transport the decking for disposal by regrinding. *Id.* ¶¶ 57−62 & Ex. B. The letter agreement memorializing that agreement indicates that the decking at issue was located at LP's Selma facility. *Id.* ¶ 61 & Ex. B. The Garland Parties later reported that they had destroyed the November 2009 decking in accordance with the agreement. *Id.* ¶ 65.

A third transaction took place in August of 2011, when the Garland Parties purchased an "additional quality of decking product from LP's Selma, Alabama plant" for $35,000. *Id.* ¶¶ 66−68. As with the previous sales, LP alleges that the Garland Parties "knew or should have known that the decking they bought in the August 2011 sale was recalled decking and could not be sold or distributed for retail or consumer purposes," and that the Garland Parties "promised and agreed not to resell or distribute the product as decking and to properly dispose of the product, as they had allegedly done previously." *Id.* ¶¶ 70, 72.

According to LP, "the decking [the Garland Parties] sold Boston Cedar may have consisted of a combination of products [the Garland Parties] bought in the January 2009 Sale, the November 2009 Sale, and/or the August 2011 Sale." *Id.* ¶ 84. LP therefore alleges that the Garland Parties breached one or more of their agreements with LP by failing to destroy these products and instead selling them for retail or consumer use. *Id.* ¶¶ 85−86. LP also claims that the Garland Parties breached certifications that they had made the Consumer Product Safety Commission, defrauded

4

1    Boston Cedar, and "violated state a federal laws relating the sale of recalled products." *Id.*
2    ¶¶ 86−88.

### D. Allegations of the Garland Parties' Counterclaim

The Garland Parties dispute LP's characterization of the transactions at issue. With respect to the January 2009 transaction, the Garland Parties "deny that they ever were presented or paid for any of the recalled decking that was subject to disposal." Garland Answer ¶¶ 50−56. As for the November 2009 transaction, the Garland Parties dispute that a "sale" occurred, because "there was no barter or exchange of any payment." *Id.* ¶ 58. They admit that they "took possession of and transported certain materials subject to recall and to be disposed of." *Id.*; *see also id.* ¶ 112. The Garland Parties state they complied with their obligation to ensure that the November 2009 material was reground. *Id.* ¶¶ 115−16.

According to the Garland Parties, "decking material manufactured in the Selma, AL manufacturing plant of LP was not subject to the recall," and the material that the Garland Parties purchased in August of 2011 was manufactured at that plant. *Id.* ¶¶ 117, 119−20. They also state that "LP confirmed to the Garland Parties that the Subject Material was not subject to recall and was suitable for resale." *Id.* ¶ 130. This representation allegedly occurred "at the time of the transaction." *Id.* ¶ 133.

The Garland Parties "relied on the representations of LP in selling the Subject Material to Boston Cedar." *Id.* ¶ 135. The subject decking was sold "F.O.B. Selma, AL," and the transportation was coordinated by LP and Boston Cedar. *Id.* ¶¶ 126, 129. The Garland Parties did not request and were not involved in repackaging the subject decking. *Id.* ¶ 128.

## III. ANALYSIS

### A. Jurisdiction

This Court has supplemental jurisdiction over LP's third-party claims and the Garland Parties' counterclaims pursuant to 28 U.S.C. § 1367:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such

5

>supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

The Court has jurisdiction over Boston Cedar's underlying claims against LP pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000. *See* FAC ¶ 7. The claims at issue in the present Motions are based on the same transaction as Boston Cedar's underlying claim, and therefore fall within the scope of § 1367. The Court need not address whether any other jurisdictional statute, such as § 1332, also applies to these claims.

### B. Legal Standard

#### 1. Motions to Dismiss

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In this case, the Court therefore takes LP's allegations as true for the purpose of resolving the Garland Parties' Motion, and takes the Garland Parties' allegations as true for the purpose of resolving LP's Motion. Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation

of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Rule 9(b) of the Federal Rules of Civil Procedure sets a heightened pleading standard for claims based on fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Ninth Circuit has held that in order to meet this standard, a "complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *see also McMaster v. United States*, 731 F.3d 881, 897 (9th Cir. 2013). The heightened standard does not apply to "[m]alice, intent, knowledge, and other conditions of a person's mind." Fed. R. Civ. P. 9(b).

If a complaint is dismissed for failure to state a claim, "there is a general rule that parties are allowed to amend their pleadings," but the court may deny leave to amend if "any amendment would be an exercise in futility." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

### 2. Motion for Judgment on the Pleadings

The Garland Parties filed their Motion soon after filing their "Special Answer," which purported to reserve their right to file a motion to dismiss. *See* Garland Answer at 2 n.1. LP correctly observes that the Federal Rules of Civil Procedure do not permit a party to file a Rule 12(b)(6) motion to dismiss after it has filed an answer. LP Opp'n (dkt. 72) at 5. Nor do the Federal Rules include any provision by which a party can file a "special answer" to circumvent that restriction. LP concedes, however, that the motion should be construed as a Rule 12(c) motion for judgment on the pleadings, and that "[a]nalysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6)." *Id.* (quoting *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). Because there is no substantial difference in analysis, and for consistency

7

1    with the parties' terminology, this Order refers to the Garland Parties' Motion as a motion to
2    dismiss.

### 3. Application of Michigan Law

"Under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), when a federal court exercises diversity or pendent jurisdiction over state-law claims, 'the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.'" *Felder v. Casey*, 487 U.S. 131, 151 (1988) (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945)). "Pursuant to *Erie* and its progeny, federal courts [exercising jurisdiction over state-law claims] apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003). "Federal courts should 'hesitate prematurely to extend the law . . . in the absence of an indication from the [state] courts or the [state] legislature that such extension would be desirable.'" *Del Webb Cmtys., Inc. v. Partington*, 652 F.3d 1145, 1154 (9th Cir. 2011) (quoting *Torres v. Goodyear Tire & Rubber Co.*, 867 F.3d 1234, 1238 (9th Cir. 1989)) (alterations in original).

The parties appear to agree that Michigan law governs their respective claims, as evidenced by both parties' citations to Michigan law in their briefs. *See* LP Mot. at 5−6; LP Mot. at 5. For the purpose of resolving the present motions, the Court assumes without deciding that this is correct. The Court therefore applies Michigan substantive law in accordance with *Erie* and its progeny.

### C. Garland Parties' Motion to Dismiss Third-Party Complaint

LP brings three third-party claims against the Garland Parties, for indemnity, contribution, and breach of contract (seeking specific performance). The Garland Parties move to dismiss all three claims.

### 1. Indemnity Claim

LP alleges that "[i]f Boston Cedar recovers a verdict against LP . . . such liability will have been brought about and caused totally and solely by reason of the negligence, breaches of contract, breaches of warranties, fraudulent and/or negligent misrepresentations, or other culpable conduct of [the Garland Parties]," and that the Garland Parties must therefore indemnity LP. LP Answer

¶ 100−01.

As a starting point, the Garland Parties argue that in order to hold them "liable under a claim of indemnity or contribution, there must be allegations sufficient to demonstrate that either (1) they are joint tortfeasors (the extent that LP is liable); or (2) they committed fraud against Boston Cedar while acting in a capacity that would expose LP to potential liability." Garland Mot. at 5.  Their Motion cites no authority for this statement of law.  *See id.*  LP appears to dispute the Garland Parties' characterization of the law, but also provides little in the way of substantive authority as to the scope of indemnity under Michigan law.  LP cites one Michigan appellate decision for the general proposition that "[c]ommon law indemnity is based on the equitable principle that where the wrongful act of one results in another being held liable, the latter party is entitle to restitution from the wrongdoer."  LP Opp'n at 7 (quoting *Hill v. Sullivan Equip. Co.*, 86 Mich. App. 693, 696 (1978)).  With this limited guidance from the parties, the Court undertakes its own review of Michigan law.

"Michigan courts recognize three possible sources of a right to indemnification: the common law, an implied contract, and an express contract."  *Paul v. Bogle*, 193 Mich. App. 479, 490 (1992).  LP's Opposition invokes only common law indemnity, and its third-party complaint includes no allegation that the Garland Parties impliedly or explicitly agreed to indemnify LP.  The Court therefore focuses on the common law.

*Hill*—the same case that LP cites in its Opposition—states that unless the "primary plaintiff's complaint" alleges "derivative liability, the defendant is not entitled to common law indemnity."  *Hill*, 86 Mich. App. at 696−97.  In that case, because the "plaintiffs' complaint d[id] not allege vicarious liability," the appellate court held that "the trial court, therefore, correctly determined that defendant was not entitled to common law indemnity."  *Id.* at 697.

This limitation of common law indemnity is supported by more recent decisions by the Michigan courts.  "Common law indemnity is intended *only* to make whole again a party held *vicariously* liable to another through no fault of his own."  *Botsford Continuing Care Corp. v. Intelistaf Healthcare, Inc.*, 292 Mich. App. 51, 62 (2011) (citation omitted; emphasis added).  "Therefore, a common-law indemnification action 'cannot lie where the plaintiff was even .01

9

percent actively at fault.'" *Id.* at 63 (quoting *St. Luke's Hospital v. Giertz*, 458 Mich. 448, 456 (1998)). "Courts primarily look to the plaintiff's complaint in the underlying lawsuit to determine whether a prospective indemnitee was actively [at fault]." *Proassurance Corp. v. Nefcy*, 480 Mich. 916 (2007) (citing *Hill*, 86 Mich. App, at 696−97).

Michigan's limitations on common law indemnity also accord with general principles of tort law. The Restatement (Third) of Torts provides that a defendant may recover indemnity if: (1) there was a contractual agreement to indemnify, (2)(i) the indemnitee "was not liable except vicariously for the tort of the indemnitor," or (2)(ii) the case relates to products liability in ways not applicable here. *See* Restatement (Third) of Torts: Apportionment of Liability § 22(a).

LP cites *Banks v. City of Emeryville*, 109 F.R.D. 535 (N.D. Cal. 1985), for the proposition that "the claims upon which indemnity is based need not be similar to the claims asserted in the original complaint." LP Opp'n at 8 (quoting *Banks*, 109 F.R.D. at 540). That statement describes the procedural standards for third-party practice under Rule 14 of the Federal Rules of Civil Procedure. *Banks*, 109 F.R.D. at 540. As stated in *Banks*, such claims must satisfy both "the requirements of Rule 14(a) *and the substantive requirements of state law*." *Id.* at 539 (emphasis added). The substantive claims in that case were based on California law, *id.* at 539−40, and thus have no bearing on the scope of common law indemnity under Michigan law.

Here, Boston Cedar's underlying First Amended Complaint claims that LP is directly liable for its own misstatements made to Boston Cedar, or perhaps vicariously liable for the actions of its employee Stanley Oliver. *See* FAC ¶¶ 36−45. Boston Cedar does not seek to hold LP vicariously liable for any conduct by the Garland Parties, and LP specifically alleges that the Garland Parties did not act "as an agent, representative, partner, or affiliate of LP." *See* LP Answer ¶ 91. LP therefore cannot seek common law indemnity from the Garland Parties under Michigan law. *See Botsford Continuing Care*, 292 Mich. App. at 62−63; *Hill*, 86 Mich. App. at 696−97. Accordingly, LP's indemnity claim must be DISMISSED. LP may amend its third-party complaint if it is aware of facts supporting a claim for indemnity based on implied or express contract.

10

### 2. Contribution Claim

LP alleges that if Boston Cedar has been damaged, "those damages proximately resulted, in whole or in part, from the . . . culpable conduct of [the Garland Parties]." LP Answer ¶ 103. LP therefore claims that "[i]f Boston Cedar obtains a judgment against or settlement from LP, then LP . . . will be entitled to recover from [the Garland Parties] for their proportional share of fault." *Id.* ¶ 104.

The Garland Parties conflate the standards for indemnity and contribution, stating the same uncited rule for both theories of recovery. *See* Garland Mot. at 5. LP cites a Michigan Supreme Court decision for the rule that "[c]ontribution is the partial payment made by each or any of jointly or severally liable tortfeasors who share a common liability to an injured party." LP Opp'n at 7 (quoting *St. Luke's Hosp.*, 458 Mich. at 453). The case on which LP relies focuses on indemnity, not contribution—although earlier phases of the case also addressed contribution, the Michigan Supreme Court declined to review that issue. *See St. Luke's Hosp*, 458 Mich. at 452. That opinion therefore discusses contribution only for the purpose of comparing that doctrine to indemnity. *Id.* at 453−56.

Contribution in Michigan is primarily a statutory theory. One appellate court has summarized the applicable statute as follows:

> M.C.L. § 600.2925a; M.S.A. § 27A.2925(1) provides a right to contribution where two or more persons become jointly or severally liable in tort for the same injury to person or property. Contribution is available whether the acts of the tortfeasors are separate, independent, or concurrent, and may include tortfeasors who are liable in tort on separate legal theories. *O'Dowd v. General Motors Corp.,* 419 Mich. 597, 604−05, 358 N.W.2d 553 (1984). All that is necessary is that the tortfeasors commonly share a burden of tort liability. *Id.*

*Emp'rs Mut. Cas. Co. v. Petroleum Equip., Inc.*, 190 Mich. App. 57, 66 (1991). The Garland Parties' assertion that they must have either been "joint tortfeasors" or "acting in a capacity that would expose LP to potential liability" is therefore not an accurate statement of Michigan contribution law. *See* Garland Mot. at 5. The relevant question is whether LP's third-party complaint alleges facts that plausibly support a claim that the Garland Parties are liable to Boston Cedar in tort for the same purported injury as LP. *See Emp'rs Mut.*, 190 Mich. App. at 66.

11

1    LP argues that a number of legal theories "amply support" its contribution claim—
2 specifically, "that the Garland Defendants' conduct constituted breach of contract, breach of duty
3 to LP, and violation of state and federal laws." LP Opp'n at 8 (citing LP Answer ¶¶ 86, 89,
4 93−94). None of these theories support a contribution claim, because none allege that the Garland
5 Parties are liable "for the same injury" as LP (i.e., the purported injury to Boston Cedar). *See*
6 *Emp'rs Mut.*, 190 Mich. App. at 66. Paragraphs 86, 93, and 94 allege that the Garland Parties are
7 liable or owed a duty to LP. LP Answer ¶¶ 86, 93−94. Paragraph 89 states that the Garland
8 Parties "violated federal and state laws relating to the sale of recalled products," without
9 identifying any such laws or suggesting that they create liability to Boston Cedar. *Id.* ¶ 89.

   LP's third-party complaint includes one allegation that could support its contribution claim, which is not mentioned in its Opposition: that the Garland Parties "defrauded Boston Cedar." *Id.* ¶ 88. Under Michigan law, there are six elements to a traditional fraud claim:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, it knew that it was false, or made the representation recklessly, without any knowledge of its truth, and as a positive assertion; (4) the defendant made the representation with the intention that it should be acted on by the plaintiff; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff suffered injury due to his reliance on the representation.

*MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 662 (6th Cir. 2013) (citing *Hord v. Envtl. Research Inst. of Mich.,* 463 Mich. 399, 617 N.W.2d 543, 546 (2000) (per curiam)). "An additional requirement for element five is that the plaintiffs' reliance on the alleged misrepresentation must have been reasonable." *Id.* at 662−63.

   Assuming for the sake of argument that LP's third-party complaint alleges each of these elements, it does not allege them with sufficient particularity to satisfy Rule 9(b). LP alleges that the Garland Parties "represented to Boston Cedar that the decking was not subject to recall and was suitable for retail sale and consumer use," LP Answer ¶ 74, but fails to allege "times, dates, places, benefits received, and other details of the alleged fraudulent activity" as required by the Rule. *See Neubronner*, 6 F.3d at 672.

   The underlying First Amended Complaint includes greater specificity as to the Garland

Parties' communication with Boston Cedar. *See* FAC ¶ 16 ("On or about September of 2011, Cal Garland d/b/a Meadow River Lumber contacted Boston Cedar with an offer to sell certain decking materials manufactured by LP and suitable for resale to retailers and consumers."). However, LP denied these allegations in its Answer, and did not include any allegations in their place that meet Rule 9(b)'s particularity requirement. *See* LP Answer ¶ 13. The Court is aware of no authority that would allow LP to rest its claim on allegations by another party that LP has denied.

Michigan's contribution statute requires that both parties share a common liability. *Emp'rs Mut.*, 190 Mich. App. at 66. The only basis that LP alleged for the Garland Parties to share a liability to Boston Cedar is fraud, but LP's third-party complaint does not meet the applicable pleading standard under Rule 9(b). LP's contribution claim is therefore DISMISSED. LP may amend this claim if it is able to allege fraud by the Garland Parties with particularity, or if it is aware of facts supporting another theory by which the Garland Parties would be liable to Boston Cedar.

### 3. Contract Claim (Specific Performance)

LP's third claim alleges that "[b]y selling the decking to Boston Cedar and by not having the decking destroyed, [the Garland Parties] have breached their contractual promises and obligations to LP." LP Answer ¶ 107. LP alleges that the sale to Boston Cedar "breached the terms of the January 2009 Sale, the November 2009 Sale, and/or the August 2011 Sale." *Id.* ¶ 86. The Garland Parties' challenge to this claim consists entirely of an argument that it is not plausible that the decking sold to Boston Cedar was subject to the November 2009 agreement between LP and the Garland Parties. Garland Mot. at 7−10.

The Garland Parties do not dispute that they purchased the subject decking from LP in August of 2011. Even assuming for the sake of argument that the subject decking was not subject to the November 2009 agreement, LP has separately alleged that "[i]n the August 2011 Sale, [the Garland Parties] promised and agreed to not resell or distribute the product as decking and to properly dispose of the product, as they had done previously." LP Answer ¶ 72. This allegation—which the Court takes as true for the purpose of the Garland Parties' Motion—is sufficient to support a claim for breach of contract, regardless of whether the 2009 agreement also applies. The

13

1  Garland Parties' motion to dismiss this claim is DENIED.  The Court need not address whether
2  LP's allegations regarding the 2009 agreement are plausible.
3  As LP notes in its Opposition, the Garland Parties have not challenged LP's assertion that,
4  if LP prevails on its contract claim, LP would be entitled to specific performance because it has no
5  adequate remedy at law.  The Court therefore does not address that issue in the present Order.  LP
6  is not, however, relieved of its burden to demonstrate that it lacks a legal remedy in order to obtain
7  specific performance.

### D. LP's Motion to Dismiss Counterclaim

The Garland Parties' sole counterclaim is for fraud, alleging that "[t]o the extent that it is found that the Subject Material was subject to recall and not suitable for resale, LP falsely reported to the Garland Parties that the Subject Material was suitable for resale to retailers and consumers." Garland Answer ¶ 134.  The elements of a claim for fraud under Michigan law are set forth above in the Court's analysis of LP's claim for contribution.  LP moves to dismiss based on three arguments: (1) the Garland Parties have not alleged recoverable damages, LP Mot. at 6−7; (2) the Garland Parties' alleged reliance was unreasonable as a matter of law, *id.* at 7−9; and (3) the Garland Parties failed to allege that LP knew its alleged statements were false or made them recklessly, *id.* at 9−10.

#### 1. Damages

One element of a Michigan common law fraud claims is that "the plaintiff suffered injury due to his reliance on the representation." *MacDonald*, 724 F.3d at 662.  The Garland Parties allege that they "have been damaged and continue to suffer damages including but not limited to, economic harm, loss and consequential damages as a result of being brought into this lawsuit." Garland Answer ¶ 146.  LP argues that this is an improper attempt to construe the Garland Parties' attorneys' fees as damages.  *See* LP Mot. at 6.  Under Michigan law, "attorneys' fees are not recoverable as . . . damages unless expressly authorized by a statute, court rule, or recognized common-law exception." *McCausey v. Oliver*, 253 Mich. App. 703, 705 (2002) (citing, e.g., *Popma v. Auto Club Ins. Ass'n*, 446 Mich. 460, 474 (1994)).  LP also argues that aside from possible attorneys' fees, the Garland Parties have suffered no damages because they made a

significant profit on the sale of the subject decking. LP Mot. at 6−7. The Garland Parties argue that "their damages are undetermined and not definite but still exist," that it "is a question of fact what damages" they have suffered, and that they have "pled sufficient facts to make out a prima facie case of common law fraud." Garland Opp'n (dkt. 74) at 4.

The Court agrees with LP. Damages are an element of the Garland Parties' claim, and the Garland Parties therefore must plead sufficient facts to plausibly support the conclusion that they have been damaged. *See Iqbal*, 556 U.S. at 678. The Garland Parties' counterclaim only alleges damages "*as a result of being brought into this lawsuit*," which—given that no other party has filed a claim against the Garland Parties—can only refer to costs and attorneys' fees. *See* Garland Answer ¶ 146 (emphasis added). Looking only to the Garland Parties' allegations, it is actually not clear that they profited from the sale—there are no admissions or allegations in the Garland Parties' Answer and Counterclaim addressing the price that Boston Cedar paid the Garland Parties for the subject decking. *See generally id.* But there are also no allegations that they suffered damages from the transactions, other than costs and fees of this action that are not recoverable under Michigan law. The Court GRANTS LP's Motion to Dismiss on this basis. The Garland Parties may be able to amend their counterclaim to allege recoverable damages. The Court therefore examines LP's other arguments to determine whether leave to amend is appropriate.

### 2. Reasonableness of Reliance

LP is correct that "under Michigan law, a court may determine, based on the complaint, that plaintiff's reliance was unreasonable." *MacDonald*, 724 F.3d at 664. The allegations here, however, are not analogous to cases where courts have reached that conclusion.

In *MacDonald*, the plaintiffs claimed to have relied on the defendant law school's "'percentage of graduates employed' statistic to mean 'percentage of graduates employed in full-time legal positions.'" *Id.* at 664. The district court held that it was unreasonable as a matter of law for the plaintiffs to disregard "basic deductive reasoning" and the plain language of the representation, and the Sixth Circuit affirmed. *Id.* The *MacDonald* plaintiffs also claimed to have relied on a survey stating the "average starting salary for all graduates" even though the survey indicated that not all graduates had responded. *Id.* at 664−65. The Sixth Circuit agreed with the

1  district court that a "plaintiff unreasonably relies on the defendant's statements if another of

2  defendant's statements contradicts it." *Id.* at 665. *MacDonald* cites a Michigan appellate court's

3  decision in *Novak v. Nationwide Mutual Insurance Co.*, 235 Mich. App. 675 (1999), where the

4  state court determined at the pleading stage that an employee unreasonably relied on statements by

5  his employer that contradicted his written employment agreement. *MacDonald*, 724 F.3d at 664

6  (summarizing *Novak*, 235 Mich. App. at 549−53).

7  Here, LP argues that the Garland Parties should have known the subject decking was not

8  suitable for resale because they purchased the decking for only $30,000 and sold it for nearly ten

9  times that amount to Boston Cedar, and because the Garland Parties had experience with recalled

10 decking at LP's Selma facility. LP Mot. at 7−6. As a starting point, as stated above, there is no

11 basis to determine the sale price to Boston Cedar based on the Garland Parties' admissions and

12 allegations. Further, assessing what inferences the Garland Parties should have drawn from price

13 and past experience goes well beyond cases where plaintiffs disregarded contradictory statements

14 or the plain language of a representation. The fact that there was recalled decking at the Selma

15 facility in 2009 does not establish that all decking at that facility in 2011 was also subject to the

16 recall.[5] The fact that the Garland Parties bought the decking at very favorable price also does not

17 establish that it was unsuitable for resale. Other factors could conceivably have led LP to sell off

18 the decking at a rock-bottom price—perhaps, e.g., LP's plans to sell the Selma facility, *see*

19 Garland Answer ¶ 118, or the effect of the earlier recall on the reputation of that facility's product.

20 Although the Garland Parties' alleged reliance may ultimately be found unreasonable, at this stage

21 the Court draws all reasonable inferences in the non-moving party's favor, and "a well-pleaded

22 complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

23 improbable, and that a recovery is very remote and unlikely." *See Twombly*, 550 U.S. at 556.

24 Applying that framework, the Court does not conclude from the Garland Parties' allegations that

---

[5] The Garland Parties dispute that the recalled decking in 2009 was located at the Selma facility. Garland Opp'n at 3. LP argues that this position contradicts the Garland Parties' pleadings. LP Reply at 5−6. The Court need not resolve this dispute. Even assuming for the sake of argument that the earlier recalled decking was in Selma, that does not make the Garland Parties' alleged reliance unreasonable as a matter of law.

1   their reliance was unreasonable as a matter of law.

### 3. Knowledge of Falsehood

Finally, LP argues that the Garland Parties failed to allege that LP knew its representations were false or made them recklessly. LP Mot. at 9−10  LP further contends that because the Garland Parties failed to address this argument in their Opposition, they "tacitly conceded" the issue and should not be granted leave to amend. LP Reply at 2. LP is correct that courts have at times dismissed claims without leave to amend where a party failed to address an argument for dismissal. *See Henneberry v. City of Newark*, No. 13-cv-05238-MEJ, 2014 WL 4978576, at *15 (N.D. Cal. Oct. 6, 2014) (citing, e.g., *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1131 (N.D. Cal. 2008)). Those cases, however, involved multiple claims, with the plaintiffs actively addressing some of their claims and failing to address others. It is more reasonable to conclude that a plaintiff abandoned a claim in those circumstances than it is here, where the Garland Parties have only one claim and have clearly attempted, albeit imperfectly, to keep that claim alive.

Further, there are in fact allegations in the Garland Parties' counterclaim that, taken as true, sufficiently support the conclusion that LP knowingly made false statements. The Garland Parties allege that "LP intentionally concealed [the fact that the subject decking was not suitable for resale] from the Garland Parties in order to entice them into purchasing the Subject Material." Garland Answer ¶ 138. If LP "intentionally concealed" information, it is at least reasonable to infer that LP was aware of that information, and thus knew that its representations otherwise were false. The Court therefore finds that the Garland Parties have adequately alleged LP's knowledge of falsehood. *See* Fed. R. Civ. P. 9(b) ("[K]nowledge . . . may be alleged generally.")

\* \* \*

The Garland Parties' counterclaim is DISMISSED for failure to allege recoverable damages, with leave to amend. LP has not raised the issue of whether the Garland Parties other allegations satisfy the pleading standard of Rule 9(b), and the Court need not address that in light of the dismissal on other grounds. If the Garland Parties choose to amend, however, their amended counterclaim should be consistent with that standard.

## IV. CONCLUSION

For the reasons stated above, LP's Motion to dismiss the Garland Parties' counterclaim is GRANTED. The Garland Parties' Motion is GRANTED as to LP's indemnity and contribution claims, but DENIED as to LP's contract claim. Both parties may file amended pleadings no later than January 16, 2015.

**IT IS SO ORDERED.**

Dated: December 9, 2014

JOSEPH C. SPERO
United States Magistrate Judge